UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
SEACON CORPORATION,

                                        Plaintiff,

        -v-                                             6:06-CV-1022

CELLECT, LLC,

                                        Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                            OF COUNSEL:

MENTER, RUDIN & TRIVELPIECE, P.C.       JULIAN B. MODESTI, ESQ.
Attorneys for Plaintiff                 MITCHELL J. KATZ, ESQ.
308 Maltbie Street, Suite 200
Syracuse, NY 13204-1498

HACKER & MURPHY, LLP                    JAMES E. HACKER, ESQ.
Attorneys for Defendant
7 Airport Park Boulevard
Latham, NY 12110

DAVID N. HURD
United States District Judge

## MEMORANDUM-DECISION and ORDER

## I. INTRODUCTION

Plaintiff Seacon Corporation ("Seacon") brought this action in diversity alleging breach of contract, unjust enrichment, and account stated. Defendant Cellect, LLC ("Cellect") brought counterclaims sounding in strict liability for delivery of a defective product, breach of warranty of fitness for a particular purpose, breach of warranty of merchantability, breach of express warranty, and breach of contract. Seacon moves for partial summary judgment for liability on its breach of contract and account stated claims. Seacon also moves to dismiss Cellect's counterclaims for lost sales. Cellect cross moves to dismiss the account

stated cause of action and damages for failure to purchase of additional material.  Oral

argument was heard on October 10, 2008, in Utica, New York.  Decision was reserved.

## II. <u>FACTS</u>

Seacon markets and sells specialized industrial chemicals to customers in the

rubber and foam production industries.  Cellect is a manufacturer of specialty foam products.

Cellect manufactures, among other things, polyolefin bun foam which is used in medical and

automobile applications.  The bun foam is manufactured using a blowing agent, in this case

azodicarbonamide ("ADC-DN12").

On January 25, 2005, Cellect contracted with Seacon to sell it 4000 pounds of

ADC-DN12 in order for Cellect to determine if the ADC-DN12 worked in its processes.

Representatives from the companies discussed specifications and analysis of a blowing

agent then in use by Cellect.

On February 2, 2005, Cellect issued a purchase order to Seacon placing a

"blanket order for two containers per month for twelve months" of ADC-DN12.  Thereafter

monthly shipments were sent by Seacon and received by Cellect without incident until

November 2005.

Cellect contends that it required the ADC-DN12 purchased from Seacon to meet

the requirements of its technical data sheet.  For example, according to Cellect the

specification for ADC-DN12 required the particle size distribution to be 10 to 12 microns.

However, the purchase order did not mention any technical specifications or requirements for certification of analyses done on each lot shipped.[1]

Cellect did not perform any type of test on any of the shipments of ADC-DN12.  In fact, Cellect did not have the capability to perform tests at its production facility.  Seacon provided certificates of analysis for the shipments.  However, Cellect only checked to be sure a lot number was on the certificate and then it was filed.

Seacon made a shipment of ADC-DN12 to Cellect on November 7, 2005.  Cellect used the blowing agent from the November 7 shipment in manufacturing on or about November 10 to 15, 2005.  On November 14 Cellect notified Seacon that it was having production problems with the ADC-DN12 used over the weekend.  Seacon made a pallet of ADC-DN12 from a different lot available to Cellect to pick up on that day.  Cellect picked up the ADC-DN12 late in the day on November 15.

Cellect remained in possession of approximately 343 drums of ADC-DN12 from the November 7 shipment.  On December 1, 2005, Cellect notified Seacon that it wanted to return the remaining 343 drums of ADC-DN12 from the November 7 shipment, and requested that Seacon send replacement ADC-DN12.  Seacon never sent replacement material.

According to Seacon, on December 7, 2005, it asked Cellect to send one drum from the November 7 shipment to a large customer for analysis and to return the 343 drums

---

[1]  Although the parties refer to the reverse side of the purchase order as specifying that the product would comply with applicable specifications and samples provided, neither party has submitted a legible copy of the terms and conditions on the back of the purchase order.  Accordingly, such terms cannot be considered.

to Seacon's warehouse.  Cellect denies that it was asked to send a drum of the ADC-DN12 for testing.  However, Cellect acknowledges that it kept the remaining 343 drums.

Cellect used the 343 drums of ADC-DN12 from the November 7 shipment to produce bun foam.  According to Cellect, its scrap rates were very high using the ADC-DN12 blowing agent from the November 7 shipment but the alternative was to shut down the plant as it had no other blowing agent supplier.  Cellect also contends that the non-conforming shipment of ADC-DN12 resulted in the loss of business from two of its customers, MH Stallman and Creative Foam.

Seacon also made shipments to Cellect on Nov. 15, Dec. 6, Dec. 9, and Dec. 27, 2005, and Jan. 6, 2006.  The only correspondence regarding these shipments pertained to Cellect's failure to pay.  Cellect has not paid invoices dated August 29, 2005; October 7, 2005; November 7, 2005 (2); November 15, 2005; November 23, 2005; December 6, 2005; December 9, 2005; December 27, 2005; and January 6, 2006.  The unpaid invoices total $250,990.60.

## III. SUMMARY JUDGMENT STANDARD

Summary judgment must be granted when the pleadings, depositions, answers to interrogatories, admissions and affidavits show that there is no genuine issue as to any material fact, and that the moving party is entitled to summary judgment as a matter of law. Fed. R. Civ. P. 56; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S. Ct. 2505, 2509-10 (1986).  The moving party carries the initial burden of demonstrating an absence of a genuine issue of material fact.  Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 2552 (1986).  Facts, inferences therefrom, and ambiguities must be

viewed in a light most favorable to the nonmovant.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986).

When the moving party has met the burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co., 475 U.S. at 586, 106 S. Ct. at 1356.  At that point, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56; Liberty Lobby, Inc., 477 U.S. at 250, 106 S. Ct. at 2511; Matsushita Elec. Indus. Co., 475 U.S. at 587, 106 S. Ct. at 1356.  To withstand a summary judgment motion, sufficient evidence must exist upon which a reasonable jury could return a verdict for the nonmovant. Liberty Lobby, Inc., 477 U.S. at 248-49, 106 S. Ct. at 2510; Matsushita Elec. Indus. Co., 475 U.S. at 587, 106 S. Ct. at 1356.

## IV.  DISCUSSION

### A.  Seacon's Breach of Contract Claim

Once a party has established that there was a contract and that money was owed on the contract, a prima facie case of breach of contract has been demonstrated.  M. Slavin & Sons Ltd. v. Glatt Gourmet Cuisine, Inc., 23 Misc. 3d 18, 20 (N.Y. Sup. Ct. App. Term 2009); see N.Y. U.C.C. § 2-709(1)(a).  In order to withstand a summary judgment motion once the plaintiff has established a prima facie case, defendant must "proffer admissible evidence sufficient to raise a triable issue of fact."  M. Slavin & Sons Ltd., 23 Misc. 3d at 20 (citing Zuckerman v. City of N.Y., 49 N.Y.2d 557 (N.Y. 1980), Freedman v. Chemical Constr. Corp., 43 N.Y.2d 260 (N.Y. 1977)).

Unambiguous terms of a contract cannot be supplemented by parol evidence. Bethlehem Steel Co. v. Turner Constr. Co., 2 N.Y.2d 456, 460 (N.Y. 1957).  Moreover, a

"[m]ere assertion by [a party] that contract language means something to him, where it is otherwise clear, unequivocal and understandable . . . is not in and of itself enough to raise a triable issue of fact." Id.

### 1. Unpaid Balance for Product Received

Seacon seeks partial summary judgment on liability for the unpaid balance of the product Cellect received and used.

Seacon has submitted admissible evidence that there was a contract for the sale to Cellect of "two containers per month for twelve months" of "ADC-DN12." (Pltf.'s Mot. Ex. E-F Doc. No. 45-5.) Further, it is undisputed that Seacon made shipments pursuant to the contract from mid-March 2005, through January 6, 2006. It is also undisputed that Cellect received and accepted those shipments. Additionally, Seacon has submitted a listing of unpaid invoices testified to by its representative Sean Condren as the amounts Cellect has not paid for ADC-DN12 it received from Seacon. (Id. Ex. P Doc. No. 45-8, Ex. J Doc. No. 45-6.) The unpaid invoices total $250, 990.60. Thus, Seacon has established a contract with Cellect pursuant to which Cellect owes $250,990.60, constituting a prima facie case of breach of contract.

Cellect argues that the November 7, 2005, shipment failed to conform to the requirements of the contract. It contends that encompassed within the parties' agreement was the requirement to meet its technical data sheet including a particle size distribution of 10 to 12 microns, to provide a certificate of analysis for each lot number, and to notify prior to Seacon changing its supplier. Cellect points to the reverse side of the purchase order for contract language providing that the product Seacon supplied would comply with applicable specifications and samples provided. (Smith Aff. Ex. 7, Doc. No. 46-8.) The purchase order

provided by Cellect is completely illegible and therefore is of no value in withstanding summary judgment in the face of plaintiff's prima facie case. Cellect fails to create a question of fact on Seacon's breach of contract claim. Partial summary judgment on liability will be granted.

### 2. **Failure to Take Delivery of Full Contract Amount**

Cellect cross moves to dismiss Seacon's breach of contract claim to the extent that damages for failure to purchase two containers per month for the full twelve months set forth on the purchase order. According to Cellect, the purchase order was just that--merely an order, which did not become an obligation until acceptance of delivery.

An offer to purchase does not become a contract until accepted. Spitzli v. Guth, 112 Misc. 630, 637 (N.Y. Sup. 1920). Where there is no consideration given for the offer, it is revocable. Cf. id. (stating that where "consideration is paid for an offer, it becomes a contract, and is irrevocable and enforceable").

Here Cellect's purchase order was an offer to purchase ADC-DN12. No consideration was given. Accordingly, Cellect's offer could be, and was, revoked for the November 7 shipment and no deliveries were made after January 6, 2006. Cellect is entitled to dismissal of the claim for damages for failure to take delivery of two containers of ADC-DN12 per month for the entire twelve months up to February 2006.

### B. **Seacon's Account Stated Claim**

"An account stated is an agreement between parties to an account based upon prior transactions between them with respect to the correctness of the account items and balance due." Jim-Mar Corp. v. Aquatic Constr., Ltd., 195 A.D.2d 868, 869 (N.Y. App. Div. 3d Dep't 1993) (citations omitted). An agreement as to the amount due is implied where an

invoice is received and kept without objection made within a reasonable time. Id.; In re Rockefeller Center Props., 272 B.R. 524, 544-45 (Bankr. S.D.N.Y. 2000) (collecting cases). A claim for account stated fails where there has not been an account rendered, or where there is a dispute as to whether the account is accurate.

Seacon moves for partial summary judgment as to liability and Cellect cross moves to dismiss Seacon's account stated claim. Cellect contends that the account stated claim must be dismissed because there was a legitimate dispute as to the product delivered on November 7, 2005. Seacon has submitted evidence that invoices were sent on August 29, 2005; October 7, 2005; November 7, 2005 (2); November 15, 2005; November 23, 2005; December 6, 2005; December 9, 2005; December 27, 2005; and January 6, 2006. The only invoice which Cellect disputed is for the shipment on November 7. Thus, Cellect is entitled to judgment as a matter of law dismissing the account stated claim only as to the November 7, 2005, invoices. Accordingly, Seacon is entitled to partial judgment as to liability with regard to the other invoices listed above. However, Seacon may recover the full amount of damages on its breach of contract claim less any offset to Cellect as a result of its counterclaims concerning the November 7, 2005, shipment.

### C. Cellect's Counterclaim for Lost Sales

Damages for breach of contract ordinarily include those that are "the natural and probable consequence of the breach. Kenford Co., Inc. v. County of Erie, 73 N.Y.2d 312, 319 (N.Y. 1989). Any "'unusual or extraordinary damages must have been brought within the contemplation of the parties as the probable result of a breach at the time of or prior to contracting.'" Id. (quoting Chapman v. Fargo, 223 N.Y. 32, 36 (N.Y. 1918)). Whether an item of special damages is allowed will depend upon consideration of "the nature, purpose and

particular circumstances of the contract known by the parties" and what liability the parties "reasonably . . . assumed" at the time of the contracting.  Id.

In support of its summary judgment motion regarding Cellect's claim for damages for lost sales, Seacon set forth admissible evidence in the form of sworn testimony from the two customers whose sales were allegedly lost.  Donald Marriot, of Creative Foam Corporation testified that factors unrelated to Cellect, such as market factors and the sale of a packaging business, contributed to the decrease in purchases they made from Cellect. (Seacon's Rule 7.1 Statement ¶ 43, Doc. No. 45-4.)  James Stallman, of M.H. Stallman Company could not explain why sales from Cellect would have gone down because there were no large rejections or credits.  Id. ¶ 44.  He stated that no one at the company remembered any problem as a result of a formula change, and speculated (without any basis) that maybe Cellect had missed deliveries.  Id.  Additionally, Seacon has adduced admissible evidence that it had no knowledge of preexisting obligations Cellect had with its suppliers.

In opposition, Cellect makes the conclusory statement that "there are also consequential damages with respect to the lost sales with two of Defendant's biggest customers."  (Deft.'s Mem. at 9, Doc. No. 46-16.)[2]  Cellect fails to address whether Seacon could reasonably have foreseen lost sales as a component of consequential damages from a shipment of nonconforming product.  Thus, Cellect has not adduced sufficient evidence to

---

[2]  Although not pointed to in Cellect's memorandum, its Counterstatement of Material Facts states that it sustained lost sales to Creative Foam and MH Stallman as a result of Seacon providing nonconforming product.  The only admissible factual evidence of this conclusion is a comparison of annual sales to those companies.  This evidence shows a drop in sales to those companies but it does not create a question of fact as to whether the nonconforming ADC-DN12 caused the drop.

create a genuine issue for trial and Seacon is entitled to dismissal of the claim for damages due to lost sales.

## V. <u>CONCLUSION</u>

Seacon is entitled to summary judgment as to liability on its breach of contract claim for product received by Cellect. Seacon has established damages in the amount of $250,990.60; however, it did not move for judgment as to damages. Therefore, the issue of damages remains for trial.

Cellect's purchase order for two containers per month for the twelve months was merely an order that did not become an obligation until accepted by Seacon. Thus, any claim for damages for breach of contract for failure to purchase product for the full twelve months must be dismissed.

Seacon established Cellect's liability on the account stated claim, except for the November 7, 2005 invoices which were disputed. This dispute results in the dismissal of Seacon's account stated claim regarding the November 7, 2005, invoices. However, the full amount of damages are recoverable on Seacon's breach of contract claim less any counterclaim offsets.

Seacon adduced facts showing that there is no genuine issue for trial as to Cellect's counterclaim for lost sales. Cellect failed to proffer admissible evidence which created a question of fact. The counterclaim for lost sales will be dismissed.

Accordingly, it is

ORDERED that

1. Seacon Corporation's motions are GRANTED as follows:

      a.  liability on its breach of contract claim except for failure to purchase for the full twelve months;

      b.  liability on its account stated claim except for the November 7, 2005, invoices; and

      c.  Cellect's counterclaim for lost sales is DISMISSED; and

    2.  Cellect LLC's cross motion for summary judgment is GRANTED as follows:

      a.  Seacon's breach of contract claim for failure to purchase for the full twelve months is DISMISSED; and

      b.  Seacon's account stated claim for the November 7, 2005, invoices is DISMISSED.

    IT IS SO ORDERED.

_____
United States District Judge

Dated: August 12, 2009
      Utica, New York.

    Remaining for trial are Seacon's damages and Cellect's counterclaims for strict liability for delivery of a defective product, etc., regarding the ADC-DN12 shipped on November 7, 2005.